BLISS
v.
BALL.

Judgment reversed.

### BLISS *against* BALL.

IN error, on *certiorari*, from a justice's court.

*Ball* sued *Bliss* before the justice, in trespass *quare clausum fregit*, for breaking his close and taking away and converting to his own use a brindled cow. The defendant pleaded not guilty, and also that, under a writ of *fieri facias* issued out of the court of common pleas of *Lewis* county, at the suit of *Nash* against *Morton*, he, as deputy sheriff, took and sold the cow, as the property of *Morton*. At the trial before the justice, it appeared in evidence, that *Bliss* did take the cow from the possession of *Ball*, who had purchased the cow, at a fair price, of *Morton*. The cow was sold by the defendant at auction, on the execution against *Morton*, on the 25th *May*, 1811. The *fi. fa.* issued the 14th *April*, 1810, on a judgment of *May* term, 1809. The cow belonged to *Morton* at the time the execution issued, and continued his property until purchased by *Ball*, in *April*, 1811. The defendant proved, that in 1810, *Morton* had two cows; and that he sold one of them, in *November*, 1811, to one *Searl*. The defendant delayed selling on the execution, because he was instructed that a compromise was pending. The defendant admitted that he knew of the judgment and execution when he purchased the cow. The justice gave judgment for the plaintiff.

*Per Curiam.* There is no evidence of an actual and specific levy on the cow in question, by the deputy sheriff, during one year after the execution came into his hands. The execution was issued in *April*, 1810, and the plaintiff below purchased the cow of *Morton*, in *April*, 1811, and during the year 1810, *Morton* owned two cows. There is no ground for an inference, that *Ball* purchased the cow with any fraudulent intent, or for the purpose of defeating the execution. He gave a fair price, and the question is, shall the simple fact of an execution, lying dormant in the sheriff's hands for a year, and without evidence of

*A fi. fa. was issued the 14th April, 1810, against A. and was delivered to the sheriff, and in April, 1811, B. purchased a cow of A. bona fide, without any intent to defeat the execution, which lay dormant in the hands of the sheriff, until the 25th May, 1811, when he took and sold the cow; it was held that there being no evidence of an actual levy by the sheriff on the goods and chattels of A. the sale to B. was valid, and not barred by the execution.*

any thing like an actual levy on the chattels, by taking an invento-ry, by designation, or otherwise, bar a sale of a specific chattel by the debtor?  To carry the *lien* so far, would be a very inconvenient check to the circulation of property. (8 *Johns. Rep.* 452.) Though the delay on the part of the sheriff may have been by agreement of the parties to the execution, and without any fraudulent intent on their part, yet third persons have a right to presume the execution satisfied, or as expired, unless the knowledge of an actual seizure be brought home to the purchaser.  Here is no proof that any seizure was ever made; and upon the whole, the judgment below ought to be affirmed.