Johnson, J.
delivered the opinion of the Court.
It is conceded, that if the levy and sale had been made in the ordinary way, the senior executions would have been intitled to the money; and I can discover nothing in the circumstances
under which this levy was made, which would lead to a different result. The lodgment of the executions created a lien on the whole of M‘Dafliel’s personal property; and I apprehend that this lien could only be discharged by the parties interested. Now the plaintiffs in these executions have done nothing, that I can perceive, to discharge their several liens. It is true they refused to indemnify the sheriff; but in this they were merely passive: and the law. did not hold theta bound to activity. Upon lodging the executions their agency ceased ; and it became the duty of the sheriff to make the money according to the exigency of the writs. It was not incumbent on the plaintiffs to point out the time, place, or extent of the levy, or to indemnify the sheriff against his liability, if he levied on the goods of another. All this was the concern of the sheriff alone. But 1 am at a loss to discover, what merit the claim set up for Cornwell can derive from the circumstance, that he did undertake to indemnify the sheriff. If the. property belonged to M'Daniel, no indemnity was necessary; if it did not, then neither the plaintiff nor Corn-' well could be intitled to any benefit from it: And I cannot conceive, why the senior creditors should be prejudiced by a proceeding, which was either nugatory, or worse; being likely to work'an injury to a third person, the real owner of the property, if it did not belong to the defendant.
The principle contended for would lead to mischievous results in practice. It would follow, as’ a conclusion from it, that a sheriff is not bound to levy on, or sell, any property, tile title of which is called in question, unless he is indemnified. Now let us suppose, that the creditor intitled to precedence is absent, or unable from poverty, (and the case might well happen) to give the indemnity required; then, if a mere show, or pretence of title in a third person, is got up for the occasion, .the creditor, whose priority iá unquestioned, may be postponed by the contrivance of junior creditors.
But it may be asked, whether a sheriff is bound on his own responsibility, in all cases to levy on property in the possession of the defendant, although it is claimed by third persons. The *160 sheriff is not bound to levy on property which does not belong t0 the defendant; nor would his being indemnified by the pl.aitt-tiff impose such an obligation upon him. The responsibility of deciding the question of property is a delicate one, and if there exists a well-grounded apprehension that the title is not m the defeiidant, I think ho ought not to be made liable for refusing to levy. The plaintiff might get at the property by filing a bill against the person claiming it, to compel him to litigate his rights. This mode of proceeding does not, I confess, comport with that promptness which ought to characterize proceedings on final process ; but it belongs to the Legislature, and not to the Courts, to provide one of a more summary character. That in use in England, which authorizes the sheriff to summon a jury for the trial of the question, would, it seems to me, be admissible here. As the verdict only operates as an indemnity to the sheriff, with- , ,. . , ... , out concluding the title of the parties, the practice is altogether '^objectionable: and it is a matter of surprise, that the same, or a similar remedy has not yet been provided for an evil, which ajj wjJO ¡iave ¡)ac¡ Jnuc)j concern with the Courts must have seen and felt.
Eoberts®. Thomas, 6 T. Tbhns 143** 5 Id. 147. 8 Co wen, 65.
Í am aware that the American books of reports, particularly those of New York, are full of cases, in which it has been held, that a prior execution loses the lien created by the entry in the sheriff’s office, if the plaintiff has delayed proceeding on it an unreasonable length of time; and even after levy, if the property has been left in the possession of (he defendant, subsequent purchasers and junior executions have been preferred. Bliss v. Ball, 9 Johns. 132. Storm v. Woods, 11 Id. 110. Farrington v. Sinclair, 15 Id. 428. Kelly v. Griffin, 17 Id. 274. And I have some recollection of having seen a case, in which a prior execution was postponed because the plaintiff refused, after notice, to indemnify the sheriff, and a junior creditor preferred because he gave an indemnity. I am not able to lay my hands upon this case; but it is in perfect conformity with the principle of the other cases cited, namely, that the senior creditor loses ins lien by inactivity. But the universally received opinion and practice in this State, and the whole current of our decisions, are opposed to that principle.
The favour with which dormant executions are regarded by our Courts is perhaps peculiar to this State. It originated in the *161 ¡fact, that the revolutionary war left the citizens of this State almost universally involved in debt, to an extent which would have exhausted their estates, if payment had then been inforced: And the good feelings growing out of. the recollection of „ . s , , , , sutierrngs, suggested the expedient or obtaining judgments, and lodging executions as securities, which were not to be inforced until necessity required it. The effect of this arrangement was in a high degree beneficial to the industry and prosperity of the country; and hence our uniform practice on the subject. I venture to assert, that no case can be found in our books of reports, nor do I recollect to have ever seen or heard of one, in which a junior judgment was preferred to an older in relation to land, or a junior to a senior execution, in relation to personal estate, except in cases of actual fraud.
In Snipes v. Sheriff of Charleston, 1 Bay, 295, it was held, that a fi-fa. did not lose its binding efficacy, although no proceeding had been had on it for a year and a day; and money made under a junior execution against the same defendant was ordered to be paid over to the senior lien. So in Greenwood v. Naylor, 1 M‘C. 414, a plaintiff, who had lodged a fi. fa. in the sheriff’s office, with a memorandum indorsed, “ lodged to bind,” was held to be intitled to money made by a sale of the defendant’s property under a junior execution.
The same rule has prevailed in the Court of Equity. In Brown v. Gilliland, 3 Desaus. 539, a sale of certain slaves was set aside, on the ground, that they were bound by an execution in the office against the vendor, although it had been returned nulla bona nearly two years before the sale was made.
The motion to reverse the decision of the presiding Judge in this case must therefore be refused.